**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS J. DEPALMA,** | : | **Civil No.  1:22-CV-475** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.   Introduction

Thomas DePalma's Social Security appeal calls upon us to consider longstanding principles regarding the duty of an Administrative Law Judge (ALJ) to fully articulate the basis of a residual functional capacity (RFC) assessment, particularly in a case such as this one, where a prior ALJ found the plaintiff limited to sedentary work just one day prior to the relevant disability period underlying this appeal. Yet, in the instant case the ALJ determined DePalma could perform a range of light work. This latter decision, which is the subject of the instant appeal, necessarily implies that DePalma's condition improved immediately after the first ALJ decision, yet we are not provided with a fully articulated explanation for how this remarkable development took place. On these facts, a remand is warranted.

1

Thomas DePalma asserted that he was disabled due to a number of impairments, including degenerative disc disease in his back and neck, arthritis in his bilateral knees and shoulders, pain in his bilateral arms, chronic pain, and chronic bronchitis. In a prior unfavorable decision issued on February 25, 2019, an ALJ found that DePalma suffered from a host of severe impairments, including his chronic pain and obesity, and limited DePalma to a range of sedentary work. Following this unfavorable decision, DePalma's treating physician opined that he was significantly limited in his ability to sit, stand, and walk, as well as lift and carry things greater than ten pounds due to his pain. Similarly, two state agency consulting physicians opined that DePalma was limited in his ability to stand and walk.

In denying DePalma's disability application on this second occasion, the ALJ made no mention of the prior administrative finding that DePalma was limited to sedentary work other than a single conclusory statement that the prior administrative finding had been considered. (Tr. 14). Further, the ALJ found the opinion of DePalma's treating physician unpersuasive, and the opinions of the two consulting physicians partially persuasive. Yet, all three of these opinions were fairly consistent as to DePalma's limitations regarding his ability to stand and walk. On this score, Dr. Dewar, DePalma's treating physician, opined that DePalma could stand and walk for only 3 hours in an 8-hour workday. (Tr. 18). The consulting sources, Dr.

2

Parmalee and Dr. Butcofski, opined that DePalma could only stand and walk for 4 hours in an 8-hour workday. (Id.) Despite finding some of these consistent medical opinions persuasive, the ALJ rejected these standing and walking limitations, reasoning that DePalma's records showed generally stable findings on physical examination during the relevant period. (Id.)

However, this finding by the ALJ stands in stark contrast to the prior administrative decision, in which another ALJ found that "[t]he claimant has multiple orthopedic issues of mid and low back pain, bilateral knee pain and shoulder pain that affect his functional ability and limit him to sedentary exertion." (Tr. 86). While the ALJ in this matter was not bound by this prior decision, the ALJ failed to explain the apparent discrepancy between this latest decision and the prior administrative decision; namely, that as of February 25, 2019, DePalma was limited to a sedentary range of work, yet by the following day, February 26, 2019, DePalma was able to perform work at a light exertional level.

Given the ALJ's failure to explain this inconsistency, coupled with the ALJ's treatment of the medical opinion evidence regarding DePalma's ability to stand and walk, we conclude that the ALJ's burden of articulation has not been met in this case. Accordingly, we will remand this case for further consideration by the Commissioner.

II.   <u>**Statement of Facts and of the Case**</u>

On December 19, 2019, Thomas DePalma applied for disability and disability insurance benefits, as well as supplemental security income, alleging that he was totally disabled due to a host of impairments, including degenerative disc disease in his back and neck, arthritis in his bilateral knees and shoulders, pain in his bilateral arms, chronic pain, and chronic bronchitis. (Tr. 94-95). DePalma was 45 years old at the time of the alleged onset of his disability, had a high school education, and had past work as an autobody technician. (Tr. 19-20).

With respect to these physical impairments, the medical record revealed the following: prior to the alleged onset date, DePalma treated with physical therapy for his back pain and shoulder pain. (Tr. 374, 389). A discharge summary from Comprehensive Physical Therapy in December of 2017 indicated that DePalma had been diagnosed with a herniated disc in his thoracic spine after suffering an injury at work in 2014. (Tr. 374). DePalma reported that physical therapy helped his lower back, but he was still experiencing pain in his mid-back. (<u>Id.</u>) DePalma was discharged at this time in 2017 because he had plateaued in his progress. (Tr. 377).

In January of 2018, DePalma treated with Dr. Stanley Ikezi, M.D., for his chronic pain syndrome, thoracic radiculopathy, neck pain, and shoulder pain. (Tr. 529). DePalma reported that his symptoms had worsened since his last visit, which

4

he partially attributed to the change in weather. (Id.) On examination, his gait and station were normal, but he exhibited tenderness of his cervical spine and bilateral muscle spasms. (Tr. 531). In addition, his extension and flexion were noted as restricted and painful. (Id.)

Regarding his shoulder pain, a discharge summary from Comprehensive Physical Therapy in May of 2018 noted that DePalma was seen for his right shoulder pain but had treated three times in the past for his left shoulder as well. (Id.) DePalma also complained of tingling in his bilateral hands, which he attributed to his neck problems. (Id.) The discharge summary indicates that after physical therapy, he experienced some improvement but continued to report high pain levels with activity. (Tr. 391). A treatment note from DePalma's treating doctor, Dr. Dewar, in July of 2018 indicated that DePalma was still experiencing pain in his right shoulder. (Tr. 454). Thus, DePalma underwent surgical treatment for his right shoulder in October of 2018. (Tr. 524-26).

During the relevant period, DePalma continued to treat for his chronic pain. Thus, in March of 2019, DePalma was seen by Dr. Joseph Seprosky, M.D., complaining of left elbow and forearm pain. (Tr. 473). Dr. Seprosky noted that DePalma was left-handed, and that he had trouble lifting jars with his left hand and had pain with twisting and making a fist. (Id.) DePalma also treated with Dr. Ikezi

throughout 2019. Dr. Ikezi's notes from April of 2019 stated that DePalma continued to experience pain in his shoulder post-surgery. (Tr. 414). Dr. Ikezi noted that DePalma's pain was currently stable, and that he was taking oxycodone twice per day. (Id.) At a follow up appointment in June, DePalma reported that he was performing his activities of daily living but with some difficulty. (Tr. 412). In August, Dr. Ikezi noted that DePalma was experiencing sixty percent pain relief with his medication. (Tr. 409).

In September of 2019, DePalma treated with Dr. Dewar. (Tr. 479). Dr. Dewar noted that DePalma had multiple arthritic issues, including his neck, shoulders, and back, and that he could not stand or sit too long. (Id.) On examination, DePalma exhibited restriction of motion in his neck in all directions and had abnormal inspections in both shoulders. (Tr. 481). Dr. Dewar filled out a medical opinion at this time regarding DePalma's ability to perform work-related activities. (Tr. 658-60). Dr. Dewar opined that DePalma was limited to lifting and carrying less than 10 pounds because of his shoulder and back pain; could stand and walk for a maximum of 3 hours in an 8-hour workday; that after standing for 30 minutes, DePalma would need to sit for another 30 minutes before resuming standing; that DePalma would need to lie down 2 to 3 times per day; that he was limited in reaching and pushing/pulling due to his shoulder pain; and that he could occasionally twist,

crouch, and climb stairs but never climb ladders or stoop due to DePalma's pain and risk of falling. (Id.) Dr. Dewar further opined that DePalma should avoid concentrated exposure to extreme cold, wetness, and humidity, as these environmental elements worsened his symptoms. (Tr. 659).

In November of 2019, DePalma followed up with Dr. Ikezi for his pain management. (Tr. 406). Dr. Ikezi observed that DePalma's pain was managed with opiate therapy, and that he was experiencing fifty percent pain relief. (Tr. 407). A musculoskeletal examination was normal, and Dr. Ikezi noted that DePalma was performing his activities of daily living without difficulty. (Tr. 408). DePalma had an X-ray of his left hand in February of 2020, which showed focal osteoarthritis and an old fracture deformity. (Tr. 655).

At a visit with Dr. Ikezi in April of 2020 for his chronic pain syndrome, it was noted that his medication was still providing fifty percent pain relief, but he reported his pain as a 7/10. (Tr. 595-96). A review of his symptoms indicated arthralgias, back pain, and myalgias. (Tr. 597). In May of 2020, DePalma presented to the emergency room with chest pain. (Tr. 617). On examination, he exhibited normal range of motion in his back and upper and lower extremities. (Tr. 619). Following this emergency room visit, DePalma treated with Susan Hanson, CRNP, and on physical examination he exhibited no edema and a normal gait. (Tr. 645).

7

DePalma followed up with Dr. Dewar in July of 2020. (Tr. 653). DePalma reported that his pain was a 6/10, and that he was experiencing pain in his shoulders and back that was constant, dull, and achy with sharp spikes and peaks. (Id.) In August, treatment notes from pain management indicated that DePalma's pain had worsened since his last visit, particularly in his bilateral shoulders and knees. (Tr. 832). However, a musculoskeletal examination was normal. (Tr. 834). At this visit, DePalma reported only forty to fifty percent relief from his pain medications. (Tr. 835). DePalma's dosage of narcotic pain medication was increased, and in September 2020, he reported an improvement in his symptoms. (Tr. 825).

At a visit to pain management in November 2020, DePalma reported ongoing pain in his neck, back, and shoulders but noted a slight improvement since his last visit in September. (Tr. 782). By this time, DePalma's oxycodone dosage had been increased to four times per day, and DePalma reported that he still experienced increased pain symptoms particularly with changing weather. (Id.) It was noted that DePalma was experiencing decreased range of motion and joint stiffness at this time, although his musculoskeletal examination was noted to be normal. (Tr. 783-84). In January of 2021, treatment notes indicate that DePalma's pain was stable on his medications, but in March his back pain was noted as unchanged. (Tr. 893, 1046).

In addition to these impairments, treatment notes from before the relevant time period and through the date last insured indicated that DePalma was obese, as he stood 6 feet 2 inches, his weight was on average 300 pounds, and his BMI was 40 or higher throughout the relevant period. (Tr. 433, 437, 450, 467, 474, 520, 531, 618, 639, 739, 741, 784, 895, 900).

It was against this clinical backdrop that an ALJ conducted a hearing regarding DePalma's disability application on March 15, 2021. (Tr. 38-72). DePalma and a vocational expert both appeared and testified at this hearing. (Id.) In his testimony, DePalma described the severity of his physical impairments in terms that were consistent with the views of his treating provider, in that he experienced pain daily in his neck and upper and lower back, as well as in his shoulders and knees. (Tr. 47). He stated that he had a hard time walking due to the pain in his knees, and that he could not walk up one flight of stairs without needing to take a break. (Tr. 50, 56). He also stated that he was able to grocery shop if he was leaning a cart for support, and that he could do dishes for only ten minutes at a time while leaning on the sink. (Tr. 56-59). He further testified that his back pain and shoulder pain limited him in his ability to reach. (Tr. 63).

Following this hearing on April 7, 2021, the ALJ issued a decision denying DePalma's application for benefits. (Tr. 7-21). In that decision, the ALJ first

concluded that DePalma satisfied the insured status requirements of the Act through December 31, 2019, and he had not engaged in substantial gainful activity since his alleged onset date of February 26, 2019. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that DePalma suffered from the following severe impairments: arthritis of the bilateral acromioclavicular joints, thoracic radiculitis and disc herniation, and non-traumatic incomplete tear of the left rotator cuff. (Tr. 13). The ALJ found several of DePalma's impairments, including his obesity, nonsevere. (Id.) At Step 3, the ALJ determined that DePalma did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13-14).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering DePalma's limitations from his impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to occasional overhead reaching with the right upper extremity. He should never climb ladders, ropes, or scaffolds, kneel, or crawl, but could occasionally climb ramps and stairs, balance, stoop, and crouch. He could have frequent exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, weather, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations.

(Tr. 14).

10

In reaching this conclusion, the ALJ stated that he considered all of the medical opinions in the record, including the state agency consulting opinions and the opinion of DePalma's treating physician, Dr. Dewar, as well as prior administrative medical findings. On this score, the ALJ found Dr. Dewar's September 2019 opinion unpersuasive. (Tr. 18). The ALJ reasoned that Dr. Dewar's opinion was not consistent with the overall record, including objective physical findings, diagnostic testing, and clinical examinations. (Id.) The ALJ further reasoned that the plaintiff presented to a few appointments with pain, but generally had normal musculoskeletal examinations. (Id.)

The ALJ also considered the opinions of Dr. Parmalee and Dr. Butcofski, the state agency consultants, and found these opinions only partially persuasive. (Tr. 17-18). Specifically, the ALJ found that the standing and walking limitations set forth in these opinions, which limited DePalma to no more than four hours of standing and walking, were unpersuasive. (Tr. 18). The ALJ reasoned that the record reflected "general stable findings on physical examinations," and the record did not contain any objective abnormal findings that would support this standing and walking limitation. (Id.) In addition to these medical opinions, the ALJ's decision states a conclusory sentence that the ALJ considered the prior administrative decision. (Tr. 14). Curiously, the ALJ's decision is silent with respect to the prior administrative

finding that DePalma was limited to sedentary work. This is particularly troubling in the instant case, as following that administrative decision, this ALJ found that DePalma could perform work at the light exertional level without any finding or explanation that DePalma's conditions and impairments had suddenly improved since the prior administrative findings.[1]

The ALJ then found that DePalma could not perform his past work as an autobody technician but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 19-20). Having reached these conclusions, the ALJ determined that DePalma had not met the demanding showing necessary to sustain his claim for benefits and denied his claim. (Tr. 21).

This appeal followed. (Doc. 1). On appeal, DePalma challenges the adequacy of the ALJ's explanation of this RFC determination, arguing that the ALJ erred in his assessment of the medical opinion evidence, as well as in his failure to explain the inconsistencies between the ALJ's findings in this case and the prior unfavorable decision which limited DePalma to sedentary work. As we have recognized, this prior unfavorable decision limited DePalma to sedentary work through February 25,

---

[1] We are also constrained to note that many of the impairments which the prior ALJ found to be severe and considered in the decision to limit DePalma to sedentary work were not even mentioned by the ALJ in this latest decision limiting DePalma to light work.

2019. This latest ALJ decision then found that DePalma was able to perform work at the light exertional level the very next day without any discussion or consideration of the prior unfavorable decision. Moreover, the ALJ discounted the standing and walking limitations set forth by the plaintiff's treating provider, which appeared to be largely consistent with the opinions of the state agency consulting physicians, without an adequate explanation for discounting those limitations.

In our view, more is needed here. Given the ALJ's failure to explain this inconsistency, coupled with the ALJ's treatment of the medical opinion evidence regarding DePalma's ability to stand and walk, we conclude that the ALJ's burden of articulation has not been met in this case. Accordingly, we will remand this case for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777

F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are

enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we

must also ascertain whether the ALJ's decision meets the burden of articulation

demanded by the courts to enable informed judicial review. Simply put, "this Court

requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc.</u>

<u>Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted

on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "<u>Burnett</u> does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

16

**B.**    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

17

impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).   In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D.

Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal

requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony

regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

21

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C.   Legal Benchmarks for the ALJ's Assessment of Medical Opinions

DePalma filed his disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency;

relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

<u>Andrew G. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at
*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.
Judicial review of this aspect of ALJ decision-making is still guided by several
settled legal tenets. First, when presented with a disputed factual record, it is well
established that "[t]he ALJ – not treating or examining physicians or State agency
consultants – must make the ultimate disability and RFC determinations." <u>Chandler
v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating
medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence
for no reason or for the wrong reason.'" <u>Morales v. Apfel,</u> 225 F.3d 310, 317 (3d
Cir. 2000) (quoting <u>Mason,</u> 994 F.2d at 1066). Therefore, provided that the decision
is accompanied by an adequate, articulated rationale, it is the province and the duty
of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without
crediting the entire opinion. <u>See</u> <u>Thackara v. Colvin,</u> No. 1:14–CV–
00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
<u>Turner v. Colvin,</u> 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
"SSR 96–2p does not prohibit the ALJ from crediting some parts of a
treating source's opinion and rejecting other portions"); <u>Connors v.
Astrue,</u> No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
10, 2011). It follows that an ALJ can give partial credit to all medical
opinions and can formulate an RFC based on different parts from the

different medical opinions. <u>See e.g., Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

It is against these legal benchmarks that we assess the instant appeal.

### D. <u>This Case Will Be Remanded for Further Evaluation of the Medical Evidence.</u>

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d at 433. In the instant case, we conclude that the ALJ's RFC determination is not supported by an adequate explanation, and we will remand the case for further proceedings.

In the instant case, the ALJ limited DePalma to a range of light work with some postural limitations. In making this determination, the ALJ stated that he considered the medical opinion evidence, the evidence of record, and the prior administrative medical findings. However, there is no mention in this ALJ's decision of the prior administrative finding which limited DePalma to sedentary work. Indeed, as we have mentioned, in a prior unfavorable decision, another ALJ found that DePalma had a number of severe impairments that the ALJ in the instant

decision did not consider, including right shoulder impingement syndrome, degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, and chronic pain syndrome. (Tr. 78). The prior ALJ decision also considered DePalma's obesity to be a severe impairment. (Id.) In the decision underlying this appeal, however, the ALJ did not consider DePalma's degenerative disc disease or degenerative joint disease to be medically determinable impairments at all. Moreover, the ALJ found DePalma's obesity to be a nonsevere impairment. (Tr. 13). The ALJ in this underlying decision failed to explain how these impairments were found to be severe on February 25, 2019, but were not considered to even be medically determinable impairments as of February 26, 2019.

The ALJ further failed to articulate how DePalma was able to perform a range of light work just one day after the prior ALJ decision limited him to sedentary work. On this score, we recognize that the ALJ is not bound by this prior administrative finding. However, courts in this circuit have considered this issue and have found that, at a minimum, an ALJ must explain such a discrepancy. Relying on Fourth Circuit caselaw, Judge Conaboy held that where a prior decision limited the plaintiff to sedentary work, and a different ALJ subsequently limited the plaintiff to light work, an explanation for the discrepancy is needed:

> As noted by Plaintiff, the ALJ in the earlier decision concluded Plaintiff was limited to sedentary work on June 18, 2012, and ALJ Wolfe did

26

not explain why she found that Plaintiff's RFC increased the very next day (June 19, 2012, the alleged onset date on the claim under consideration here) despite no evidence of medical improvement. (Doc. 18 at 9.)

Explaining its decision in <u>Lively</u>, the Fourth Circuit Court of Appeals noted in <u>Albright v. Comm'r of Soc. Sec.</u>, 174 F.3d 473 (4th Cir. 1999), that in considering differing agency determinations, "common sense and logic dictated that [the plaintiff's] condition was unlikely to have improved significantly within two weeks" absent substantial evidence of improvement in the plaintiff's condition. 174 F.3d at 477. <u>Albright</u> stressed that, rather than a *res judicata* preclusion rule, such a consideration

> is instead best understood as a practical illustration of the substantial evidence rule. In other words, we determined that the finding of a qualified and disinterested tribunal that [the plaintiff in <u>Lively</u>] was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.

<u>Id.</u> at 477-78.

Here common sense and logic dictate that the earlier finding of Plaintiff being limited to sedentary work as of June 18, 2012, is an important and probative fact relevant to her RFC as of June 19, 2012. Particularly in the absence of a finding that Plaintiff's condition had improved, some explanation is warranted as to why a different RFC is supported by substantial evidence. Such an explanation should be provided upon remand.

<u>Butler v. Colvin</u>, 2016 WL 2756268, at *17 (M.D. Pa. May 12, 2016) (Conaboy, J).

Judge Brann came to a similar conclusion, finding that in such circumstances, where

the ALJ does not cite to evidence of improvement in the plaintiff's conditions, a

remand was required. See Soltishick v. Berryhill, 2018 WL 6839674, at *9 (M.D. Pa. Dec. 31, 2018) (Brann, J).

So it is here. In the instant case, the ALJ did not explain how the plaintiff's conditions improved between February 25 and February 26, 2019, such that the limitation to a light work RFC would be supported by substantial evidence. Indeed, the ALJ did not discuss what evidence in the record he found to show that the plaintiff's conditions had improved and that would support a light work RFC finding in light of the prior administrative finding limiting DePalma to sedentary work. Accordingly, we cannot conclude that the ALJ's RFC in the instant case is supported by substantial evidence.

This error is further compounded by the ALJ's treatment of the medical opinion evidence. As we have explained, all three medical opinions were largely consistent with respect to their views that DePalma was limited in his ability to stand and walk. Dr. Dewar opined that DePalma was limited to standing and walking a total of 3 hours, whereas the state agency physicians opined that DePalma was limited to standing and walking 4 hours in an 8-hour workday. The ALJ rejected the medical consensus regarding these limitations, reasoning that DePalma's objective examination findings did not support such a limitation.

While we appreciate the Commissioner's argument that the analytical paradigm that applies to evaluating medical opinions fundamentally changed in March of 2017, in our view that change does not alter the significance of medical opinion evidence to a disability analysis. Nor does that paradigm shift discount the longstanding legal principles which called for a clear articulation of the ALJ's rationale in making a disability determination.

Moreover, in the absence of some further explanation and articulation of its rationale, the ALJ's decision cannot be reconciled with the revised medical opinion regulations that the ALJ was obliged to follow. Those regulations eschew any hierarchical ranking of opinions, but call upon ALJ's to evaluate medical opinions against the following benchmarks:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

29

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

20 C.F.R. § 404.1520c.

In this case, all three physicians opined that DePalma was limited in his ability to stand and walk for more than 3 or 4 hours in an 8-hour workday. In rejecting these opinions, the ALJ stated in a conclusory fashion that these opinions were not consistent with the overall medical evidence of record, citing generally to objective examination findings. However, the ALJ did not explain how these opinions, which appear largely consistent with each other regarding these limitations, were

30

inconsistent with the medical record evidence. Rather, we are left to speculate regarding how the ALJ came to this RFC determination, which evidence he relied on, and the reasons that he rejected these medical opinions. While it is true that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361, the ALJ's determination still must meet the basic substantive standards which require the ALJ to "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433.

In our view, more is needed by way of an explanation. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

**IV.   Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: April 10, 2023